UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| TERRANCE PATTERSON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | No.: 3:23-CV-37-KAC-DCP |
| v. | ) | |
| STACEY OAKES, BRANDON FOSTER, and ALAN BUNCH, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, an inmate of the Morgan County Correctional Complex ("MCCX"), filed (1) a pro se Complaint under 42 U.S.C. § 1983, [Doc. 1], and (2) a motion for leave to proceed *in forma pauperis*, [Doc. 2]. For the reasons set forth below, the Court **GRANTS** Plaintiff's motion for leave to proceed to *in forma pauperis* [Doc. 2] and **DISMISSES** this action because the Complaint fails to state a claim upon which relief may be granted.

### I. MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

It appears from Plaintiff's motion for leave to proceed *in forma pauperis*, [Doc. 2], and supporting documents, [Doc. 6], that he is unable to pay the filing fee. Accordingly, pursuant to 28 U.S.C. § 1915, the Court **GRANTS** Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 2].

Plaintiff **IS ASSESSED** the three hundred fifty dollar ($350.00) civil filing fee. The Court **DIRECTS** the custodian of Plaintiff's inmate trust account to submit to the Clerk, United States District Court, 800 Market Street, Suite 130, Knoxville, Tennessee 37902, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to

his inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six months before the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account shall submit twenty percent (20%) of his preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this fee-collection procedure, the Court **DIRECTS** the Clerk to provide a copy of this Memorandum Opinion and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy. This document shall be placed in Plaintiff's file and follow him if he is transferred to another correctional institution.

## II.     COMPLAINT SCREENING

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *See Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

2

Allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *See Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim do not state a plausible claim to relief. *See Iqbal*, 556 U.S. at 681. However, the Supreme Court has instructed that courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than "formal pleadings drafted by lawyers." *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A. **Allegations of Complaint**

In April 2022, Plaintiff was placed in the "SMU program"[1] at MCCX [Doc. 1 at 3-4]. Placement in the SMU program purportedly requires a determination that the inmate has committed an assault or participated in gang activity [*Id.*]. Plaintiff asserts that he did not "commit any violation or [meet] the requirements to be placed in the SMU program" but "was told by administrative officials that this is what you [Plaintiff] get for messing with a white woman" [*Id.* at 4]. Defendant Officer Brandon Foster, an officer with Internal Affairs, further allegedly told Plaintiff that "I [Defendant Officer Foster] can't prove anything" [*Id.*]. Nonetheless, after Defendant Officer Foster made this statement, Plaintiff was held in the SMU program for "48 days" before being brought to a disciplinary hearing [*Id.*].

At the disciplinary hearing, Plaintiff was told that he "would be released from segregation"—a term that Plaintiff uses synonymously with the SMU program—if he "signed off on a conspiracy charge" [*Id.*]. Plaintiff asserts that he "was neither placed under investigation nor had [he] received a[] conspiracy infraction [or] a second write-up for anything" [*Id.*]. Plaintiff

---

[1] Plaintiff did not identify what the acronym "SMU" stands for.

maintains that he was "forced" to sign the false disciplinary charge "under false pretenses" [*Id*.]. Plaintiff was ultimately "held in segregation for 53 days" "without an infraction or being under investigation" [*Id*.].

While in the SMU program, Plaintiff filed an appeal to "Unit Manager (McMann)" [*Id*.]. Plaintiff made several copies of the appeal [*Id*.]. "The appeal was discarded," however, and "never made it to Head Warden (Mike Parris)" [*Id*.]. During an inspection of the unit, Plaintiff was able to get the attention of Warden Parris while outside in a recreation area [*Id*. at 4-5]. Plaintiff notified Warden Parris of the preceding events [*Id.* at 5]. Warden Parris was "completely unaware of the actions being taken against" Plaintiff and said "he would take care of it" [*Id*.]. Plaintiff was released from the SMU program a week later [*Id*.]. Plaintiff maintains that this "further indicat[es] that this prejudice and racial bias[]es[] by these individuals placing [him] in this program commit[t]ing [him] to such cruel and unusual punishment was an act of prejudice and systemic racism" [*Id*.].

On October 25, 2022, Plaintiff was "sent to segregation" after he intervened in "a heated discussion between thirty or forty gang members that was about to get out of control" in D-Pod [*Id*. at 5]. The gang members "listened [to Plaintiff] and dispersed" [*Id*.]. Plaintiff remained and "told [Corrections Officer] Miller to leave," asking if Officer Miller saw "what was going on" [*Id*.]. Officer Miller "proceeded to leave the pod (D-pod) [and] went to C-pod and let [six] (6) or [seven] (7) gang members" into D-pod, thereby "re-exciting the incident" [*Id*.]. After "a protocol search" was conducted, Plaintiff was the first inmate taken to segregation [*Id*.]. Ultimately, fourteen (14) individuals were "locked-up" following the incident [*Id*. at 5-6].

Two days later, Defendant Assistant Warden Stacey Oakes came to Plaintiff's cell in segregation and stated, "[y]ou've been showing your ass, you know w[h]ere that got you . . . back

4

to phase 1 SMU" [*Id*. at 6]. Fourteen (14) inmates were charged "with STG Activity,"[2] but Plaintiff was the only inmate "sent and referred to the SMU program" [*Id.*]. Plaintiff avers that this is "a clear indication [of] the malice and misconduct of head officials, indicating that [he] wouldn't have a fair disciplinary process" [*Id.*].

Defendant Assistant Warden Oakes referred Plaintiff to the SMU program before Plaintiff received a disciplinary write-up [*Id.*]. Plaintiff maintains that this action "show[s] the retaliation that has been taken against [Plaintiff] for beating the SMU program the [first] time on appeal [and] singling [Plaintiff] out to punish [him] for stopping" a violent incident from occurring [*Id.*]. And Defendant Officer Foster allegedly told several of the other fourteen (14) inmates charged in relation to this incident "that they only wanted Plaintiff" [*Id.*]. Plaintiff asserts that officials take these actions to "promot[e] and pit[]" black male inmates against one another "as if [they] were animals" [*Id*].

Approximately two and one-half weeks later, "in a totally different incident," Defendant Officer Foster told another inmate "that he was tired of [Plaintiff's] West [Tennessee] attitude and tired of [Plaintiff] sliding through the cracks and that inmates don't run shit in these mountains, and that they were going to break [Plaintiff] one way or the other" [*Id.*]. Plaintiff notes that he has witnessed inmates brutally beaten at MCCX, sometimes while in restraints [*Id.*].

Plaintiff filed appeals of his second placement in the SMU program but received no copies [*Id.*]. Plaintiff also asserts that he was denied copies of his "referral" and his right to review his institutional file, which allegedly violates Tennessee Department of Correction ("TDOC") "policy" [*Id.*]. Plaintiff asserts that these denials further show that "his placement in th[e] [SMU]

---

[2] Plaintiff does not identify what this acronym stands for.

program is unjust and unlawful" [*Id.*]. As a result, Plaintiff seeks monetary damages and to "have [Defendants] removed from any position of authority (terminated)" [*Id.* at 8].

B. Analysis

To state a claim for relief under 42 U.S.C. § 1983, Plaintiff must establish that a "person" acting "under color of" state law deprived him of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See* 42 U.S.C. § 1983. Plaintiff's Complaint generally sets forth factual allegations and/or legal claims without connecting those allegations and/or legal claims to any named defendant. However, the Court liberally construes the Complaint in Plaintiff's favor to specifically assert that (1) Defendant Officer Foster placed Plaintiff in the SMU program for fifty-three (53) days "without an infraction or being under investigation," [Doc. 1 at 4]; (2) Defendant Officer Foster asserted false charges against Plaintiff and failed to provide Plaintiff with a timely disciplinary hearing, [*id.*]; (3) Defendant Assistant Warden Oakes referred Plaintiff to the SMU program before Plaintiff received any infraction, in retaliation for Plaintiff filing an appeal of his prior SMU program placement, [*id.* at 6]; (4) Defendant Assistant Warden Oakes threatened Plaintiff with the SMU program, [*id.*]; and (5) Defendant Officer Foster singled Plaintiff out and threatened to "break" Plaintiff, [*id.* at 6-7]. For the reasons set forth below, Plaintiff's Complaint fails to state a claim upon which relief may be granted under Section 1983.

1. Facts and Claims Unconnected to any Defendant

Plaintiff's Complaint sets forth a number of factual allegations and/or legal claims that he does not connect to any named Defendant. These unconnected allegations fail to state a claim

6

upon which relief may be granted as to any named Defendant.³ *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted under Section 1983).

Further, Plaintiff named Acting Unit Manager Alan Bunch as a Defendant, but the Complaint contains no factual allegations against him [*See* Doc. 1]. And Defendant Acting Unit Manager Bunch cannot be held liable solely based on his supervisory position as acting unit manager. *See Iqbal*, 556 U.S. at 676 (noting that "our precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*"). Accordingly, the Court dismisses Defendant Acting Unit Manager Bunch from this action.

### 2. Official Capacity Claims⁴

Defendants are employed by TDOC, which is an arm of the State of Tennessee. *See Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (holding TDOC is equivalent of the "State"). In an action for monetary damages against a state officer acting in his or her official

---

³ Plaintiff does not assert that any Defendant violated TDOC policy by not allowing him to review his "institutional file" or receive a copy of his "referral" [*Id*. at 6]. However, to the extent Plaintiff makes this claim against any Defendant, this claim nonetheless fails. TDOC policies do not create a protected interest, and therefore, failure to follow them does not raise an issue of constitutional significance. *See Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007) ("Allegations of state law or state constitutional violations will not support a § 1983 claim."); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (finding failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protected liberty interest).

⁴ Plaintiff does not identify whether he brings this action against Defendants in their respective official capacities, individual capacities, or both. Typically, "[a]bsent a specification of capacity, it is presumed that a state official is sued in his official capacity." *Northcott v. Plunkett*, 42 F. App'x 795, 796 (6th Cir. 2002) (citing *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir. 1989)). Nevertheless, to Plaintiff's benefit, the Court presumes that Plaintiff intended to pursue this suit against each Defendant in both his or her official and individual capacities.

7

Case 3:23-cv-00037-KAC-DCP   Document 7   Filed 08/02/23   Page 7 of 15   PageID #: 43

capacity, "the plaintiff seeks damages not from the individual officer, but from the entity from which the officer is an agent." *See Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993); *see also Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent[.]"). Therefore, by suing Defendants in their official capacities, Plaintiff is essentially suing the State of Tennessee itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). However, because "a State is not a person within the meaning of § 1983," Tennessee is not amenable to suit. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989); *see also Hix*, 196 F. App'x at 355 (holding TDOC is not a "person" within the meaning of Section 1983).

Because Plaintiff cannot maintain suit against the State of Tennessee, he likewise cannot maintain suit against State personnel in their official capacities. *See WCI, Inc. v. Ohio Dep't of Pub. Safety*, 18 F.4th 509, 513-14 (6th Cir. 2021) (holding state officials sued in official capacity immune from suit under doctrine of sovereign immunity absent consent); *Berndt v. Tennessee,* 796 F.2d 879, 881 (6th Cir. 1986) (noting that Tennessee has not waived immunity to suits under Section 1983). Accordingly, Plaintiff cannot obtain monetary relief against any Defendant in his or her official capacity.

### 3. Individual Capacity Claims

To state a claim against any Defendant in his or her individual capacity, Plaintiff must adequately plead that each Defendant, through his or her own actions or inaction, violated the Constitution. *See Iqbal*, 556 U.S. at 676; *see also Frazier*, 41 F. App'x at 764 (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted). Constitutional liability cannot attach to a Defendant solely based on his or her position of authority. *See Iqbal*, 556 U.S. at 676

8

("[O]ur precedents establish. . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *Monell*, 436 U.S. at 691 (finding that liability under Section 1983 may not be imposed merely because a defendant "employs a tortfeasor").

> a. <u>April 2022 Segregation by Defendant Officer Foster and October 25, 2022 Segregation by Defendant Assistant Warden Oakes</u>

Plaintiff contends that Defendant Officer Foster placed him in segregation for fifty-three (53) days without a hearing despite admitting that he "c[ould]n't prove anything" and without Plaintiff committing any disciplinary infraction or otherwise meeting the requirements for placement in the SMU program [Doc. 1 at 3-4]. He also contends that Defendant Assistant Warden Oakes placed him in segregation a second time before Plaintiff had received an infraction [*Id.* at 6]. Liberally construed, Plaintiff's allegations implicate the Due Process Clause, Equal Protection Clause, and Eighth Amendment prohibition on cruel and unusual punishment.

> *i. Due Process Clause*

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). To assess "whether segregation of an inmate from the general prison population involves the deprivation of a state-created liberty interest protected by the due process clause," the Court must "determine if the segregation imposes an 'atypical and significant' hardship on the inmate 'in relation to the ordinary incidents of prison life.'" *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)).

There is no general liberty interest "in avoiding transfer to more adverse conditions of confinement." *See Wilkinson*, 545 U.S. at 221 (citing *Meachum v. Fano*, 427 U.S. 215, 225

9

(1976)).  And the use of administrative segregation alone has "repeatedly been held not to involve an 'atypical and significant' hardship implicating a protected liberty interest." *Jones*, 155 F.3d at 812 (citation omitted); *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997) (concluding that an inmate "could not after *Sandin* [*v. Conner*, 515 U.S. 472 (1995)], argue that placement in administrative segregation is an 'atypical and significant hardship'"); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995) (finding that mere "placement in administrative segregation was not an atypical and significant hardship, as intended by *Sandin*").  However, in certain circumstances, "a liberty interest in avoiding particular conditions of confinement may arise."  *See Wilkinson*, 545 U.S. at 222-23 (citing *Sandin*, 515 U.S. at 483-84).  Courts consider "the nature of the more-restrictive confinement *and* its duration in determining whether it imposes an atypical and significant hardship."  *See Harden-Bey v. Rutter*, 524 F.3d 789, 793 (6th Cir. 2008) (emphasis in original) (internal quotation marks omitted) (collecting cases).

Here, Plaintiff has not provided details of how conditions in the SMU program differ from ordinary confinement.  Therefore, he has failed to demonstrate that the nature of the confinement implicates his constitutional rights.  Moreover, the duration of Plaintiff's confinement in administrative segregation—fifty-three (53) days the first time and an undetermined period of time the second—does not support a finding that his liberty interests were implicated by the confinement.  *See McMann v. Gundy*, 39 F. App'x 208, 209-10 (6th Cir. 2002) (finding five-month placement in administrative segregation without a hearing did not implicate due process rights); *see also Webb v. Bucholtz*, No. 1:20-cv-1036, 2021 WL 804721, at *2-3 (W.D. Mich. Mar. 3, 2021) (holding pretrial detainee's ten-month placement in segregation failed to implicate a liberty interest entitling him to due process).  Accordingly, Plaintiff fails to state a plausible claim under the Due Process Clause.

## ii. Equal Protection Clause

To state a viable claim under the Equal Protection Clause, "a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 299 (6th Cir. 2006)). Although Plaintiff does not explicitly identify himself as a member of a suspect class, he does maintain that Defendants have targeted him (and others) because of their race [*See* Doc. 1 at 6]. A "suspect class" includes one defined by race. *See Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440, (1985). However, nothing in Plaintiff's Complaint allows the Court to plausibly infer that Defendants treated any inmate of another race who is similarly situated to Plaintiff differently than Plaintiff. *See Nali v. Ekman,* 355 F. App'x 909, 913 (6th Cir. 2009) (stating that a claim for race discrimination in prison discipline must be supported by allegations "that the people *not* disciplined were similarly situated and of a different race" to state an equal protection claim) (emphasis in original). Accordingly, Plaintiff fails to state a plausible Equal Protection claim.

## iii. Eighth Amendment Cruel and Unusual Punishment

To state a claim for violation of the Eighth Amendment's prohibition against cruel and unusual punishment,[5] Plaintiff must show that placement in administrative segregation deprived him of "the minimal civilized measure of life's necessities." *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for

---

[5] The Eighth Amendment is applicable to the States through the Fourteenth Amendment. *See Robinson v. California*, 370 U.S. 660 (1962).

11

their offenses against society, it is insufficient to support an Eighth Amendment Claim." *Id.* (quoting *Murray v. Unknown Evert,* 84 Fed. Appx. 553, 556 (6th Cir. Dec. 8, 2003)). Plaintiff makes no allegations that rise to the level of an Eighth Amendment violation. Accordingly, Plaintiff fails to allege a plausible claim.

        b. <u>False Charge and Disciplinary Hearing Denial by Defendant Officer Foster</u>

Plaintiff next alleges that Defendant Officer Foster placed him in segregation on a false charge without providing a timely disciplinary hearing [Doc. 1 at 4]. However, a prisoner does not have "the full panoply of rights due a defendant" in a criminal prosecution. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citation omitted). Rather, due process protections are implicated only when a sanction "will inevitably affect the duration of his sentence" or impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin*, 515 U.S. at 486-87. Plaintiff does not allege that his placement in segregation affected the duration of his sentence, and as noted above, his mere placement in administrative segregation does not trigger due process protections. *Id.* Further, any failure by Defendants to comply with TDOC regulations in conducting Plaintiff's disciplinary hearing does not give raise a constitutional claim because even mandatory language in prison regulations does not create a liberty interest protected by the Due Process Clause. *See Rimmer-Bey*, 62 F.3d at 790-91.

As to Plaintiff's allegation of false disciplinary infractions, inmates possess no Constitutional right to be free from charges for or convictions of prison disciplinary offenses, even if the charges later turn out to be unfounded. *See Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir. 2004) ("False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing."); *Person v. Campbell*, No. 98-5638, 1999 WL 454819, at *1 (6th Cir. June 21, 1999)

("[T]he filing of false disciplinary charges against an inmate does not constitution a constitutional violation redressable under § 1983."). Accordingly, Plaintiff fails to state a cognizable Section 1983 claim related to his allegations concerning disciplinary infractions and/or hearings.

### c. Retaliation by Defendant Assistant Warden Oakes

Plaintiff also asserts that Defendant Assistant Warden Oakes's October 25, 2022 referral of Plaintiff to the SMU program was retaliatory [Doc. 1 at 5-6]. Specifically, Plaintiff contends that he was the only one of fourteen (14) relevant inmates to be referred to the SMU program, and that this referral was an act of retaliation for "beating the SMU program" the first time [*Id.* at 6]. To establish a retaliation claim, Plaintiff must show that: (1) he "engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Here, even assuming that Plaintiff's prior appeal of his placement in the SMU program was protected conduct, Plaintiff has not identified facts from which the Court could plausibly infer that Defendant Assistant Warden Oakes acted with a retaliatory motive. *See Hill*, 630 F.3d at 475 ("[C]onclusory allegations of [a] retaliatory motive unsupported by material facts will not be sufficient to state a . . . claim" under Section 1983); *see also Cantley v. Armstrong*, 391 F. App'x 505, 507 (6th Cir. 2010) (affirming district court's holding that a prisoner's complaint was insufficient to demonstrate a causal relationship between protected activity and adverse action because "'bare allegations of malice on the defendants' parts are not enough to establish retaliation claims' that will survive § 1915A screening" (quoting *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001))).

Plaintiff was referred to the SMU program after he inserted himself in a "heated" discussion between gang members that resulted in fourteen (14) inmates, including Plaintiff, being charged. Aside from bald conclusions that this action was retaliatory, Plaintiff has not provided any evidence of retaliatory motive or a causal relationship. Instead, it appears that Defendant was referred back to the SMU program for violation of a prison regulation. Accordingly, Plaintiff fails to state a claim for retaliation upon which relief can be granted.

### d. Threats by Defendant Officer Foster and Defendant Assistant Warden Oakes

Plaintiff maintains that Defendants Officer Foster and Assistant Warden Oakes threatened him [Doc. 1 at 6]. However, verbal harassment or threats toward an inmate do not constitute "punishment" within the meaning of the Eighth Amendment. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *Faulkner v. Davidson Cnty. Sheriff's Off.*, No. 3:14-MC-00740, 2014 WL 3723205, at *2 (M.D. Tenn. July 24, 2014) ("Allegations of threats and verbal abuse do not state cognizable claims under § 1983."). Accordingly, Plaintiff's allegations that Defendants Officer Foster and Assistant Warden Oakes threatened him fail to state a claim upon which relief may be granted.

### III. CONCLUSION

For the reasons set forth above:

1. The Court **GRANTS** Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 2];

2. The Court **ORDERS** that Plaintiff be **ASSESSED** the civil filing fee of $350.00;

3. The Court **DIRECTS** the custodian of Plaintiff's inmate trust account to submit the filing fee to the Clerk in the manner set forth above;

4. The Court **DIRECTS** the Clerk to mail a copy of this Memorandum Opinion and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy;

5.  The Court **DISMISSES** this action pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A because even liberally construing the Complaint in Plaintiff's favor, it fails to state a claim upon which relief may be granted under Section 1983; and

6.  The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Fed. R. Civ. P. 24. Accordingly, should Plaintiff file a notice of appeal, he is **DENIED** leave to appeal *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24.

**SO ORDERED. AN APPROPRIATE JUDGMENT WILL ENTER.**

**ENTER:**     s/ Katherine A. Crytzer
KATHERINE A. CRYTZER
United States District Judge

15